# IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

## CIVIL CASE NO. 3:07cv318

PAULL ANDERSON, )
)
        Plaintiff, )
)
        vs. )   **MEMORANDUM OF DECISION**
)         **AND ORDER**
FRANK H. GODLEY, )
)
        Defendant. )
_____)

**THIS MATTER** is before the Court on remand by the United States Fourth Circuit Court of Appeals. Anderson v. Wade, 2008 WL 5111073 (4th Cir. 2008) to address the Defendant's Motion for Sanctions. [Doc. 6].

## PROCEDURAL HISTORY

On June 4, 2007, the Plaintiff Paull Anderson (Anderson), acting in a *pro se* capacity, sued the Defendant Frank H. Godley (Frank Godley or Godley) in the United States District Court for the Western District of Virginia. [Doc. 1-2]. Godley moved to dismiss the action for lack of personal jurisdiction and improper venue. [Doc. 1]. The presiding judge

transferred the case to this district as the proper venue, noting that Anderson had a "related action" pending here, <u>Anderson v. Wade, <i>et. al.</i></u>, Civil Case No. 3:05cv33.[1]  [<u>Id</u>.].

After the case was transferred to this Court, Godley answered and separately moved for sanctions pursuant to Federal Rule of Civil Procedure 11. [Doc. 4, 6].  On October 5, 2007, this case was consolidated with the pending case, <u>Anderson v. Wade, <i>et. al</i></u>., Civil Case No. 3:05cv33, which was designated as the lead case. [Doc. 8].

In the lead case, Anderson brought a declaratory judgment action against Margaret L. Godley, Godley, Inc., Julius Jennings Wade, Jr., James H. Wade, and Wade and Wade, Attorneys at Law, requesting this Court to declare a default judgment which he had obtained against those defendants in the Eastern District of Kentucky to be valid and enforceable in North Carolina state courts.[2]  Frank Godley was not named as a defendant in the lead case.   After the consolidation of the two cases, Anderson moved for summary judgment as a means of obtaining a declaration of the parties' rights.  Frank Godley's motion for sanctions was

---

[1]Although the record does not explicitly so state, it appears that the motion to dismiss was denied and the parties have not disputed this fact.  [Doc. 1-2].

[2]Margaret Godley was Frank Godley's mother. [Doc. 1-2, at 8].  The Wade Defendants were Mrs. Godley's attorneys. [<u>Id</u>., at 2-3].

pending at the time the motion for summary judgment was filed.

Both motions were addressed in a decision issued on March 27, 2008.  The Court held that although Anderson's Kentucky judgment was valid, the determination by the North Carolina state courts that the judgment was unenforceable in North Carolina precluded any further review and a federal district court could not overrule those state court decisions. [Doc. 10, at 1-30].  The undersigned denied without prejudice the motion for Rule 11 sanctions because the Complaint had been signed and filed in another federal district court prior to the transfer to this Court.[3] [Id., at 32-36].

By virtue of the March 27, 2008 decision, the declaratory judgment was issued and the reason for the consolidation of the two cases was no longer extant.  The consolidation was therefore vacated and the lead case was terminated in order for this case to go forward. [Id., at 37].  Anderson was provided a time within which to amend his Complaint in this case to conform with the Federal Rules of Civil Procedure or to move to dismiss his case. [Id., at 38].

On April 8, 2008, Anderson moved to dismiss the action. [Doc. 13]. That motion, which was unopposed by Godley, was granted on April 23,

---

[3]Other rulings were made in connection with miscellaneous motions but none of those rulings are relevant to the issue at hand.

2008. [Doc. 20]. As a result, Anderson no longer seeks relief as to any of the claims asserted in the Complaint.

Anderson appealed from the Court's ruling in the lead case and Godley appealed from the Court's denial of the motion for Rule 11 sanctions in this case. The United States Court of Appeals for the Fourth Circuit affirmed the declaratory judgment but vacated and remanded the denial of the Rule 11 sanctions, ruling that "a transferee district court has authority to impose Rule 11 sanctions for sanctionable filings made in the federal transferor court[.]" Anderson v. Wade, 2008 WL 5111073, at **2.

At the time of remand, no ruling had been made on the issue of whether Anderson's conduct in bringing this action was sanctionable. As a result, the undersigned provided Anderson with notice and an opportunity to respond. [Doc. 21]. A hearing was conducted on February 27, 2009 at which time Anderson appeared *pro se* and Godley appeared through counsel. Both parties addressed the Court during the hearing. The motion is therefore ready for disposition.

### STANDARD OF REVIEW

Federal Rule of Civil Procedure 11 provides in pertinent part:

By presenting to the court a pleading, ... – whether by signing, filing, submitting, or later advocating it -- an ... unrepresented party certifies that to the best of the person's knowledge, information and belief, formed after an inquiry reasonable under

the circumstances:

(1)     it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2)     the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

(3)     the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4)     the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed.R.Civ.P. 11(b).

In the motion for sanctions, and the memorandum in support thereof, Godley argues that Anderson (1) brought this action for an improper purpose; (2) filed a complaint with legal contentions which are not supported by law; and (3) filed a complaint with factual contentions having no evidentiary support. [Doc. 6, at 1; Doc. 7, at 1-2]. Godley seeks an order requiring Anderson to pay his attorney's fees in defending this action, as well as costs.

A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated. The sanction may include nonmonetary directives; an order to pay a penalty into court; or,

if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation.

Fed.R.Civ.P. 11(c)(4).

In order to determine whether Anderson's signing and filing of the Complaint was sanctionable pursuant to Rule 11, the allegations of the Complaint must be examined in conjunction with the law applicable to each purported cause of action. Brubaker v. City of Richmond, 943 F.2d 1363, 1374 (4th Cir. 1991). That is, it must be determined whether each alleged cause of action was factually and/or legally baseless from an objective point of view and whether the action was brought for an improper purpose.[4]

## ALLEGATIONS OF THE COMPLAINT AND APPLICABLE LAW

This Court has previously described the litigation history between Anderson and Margaret Godley.

This case has its genesis in a Kentucky land transaction that went sour more than a decade ago, wherein [Anderson] proposed to purchase and [] Margaret Godley and Godley, Inc. proposed to sell the land in question. The Wade[s] are attorneys who represented the Godley[s] regarding that transaction. The United

---

[4]In the motion for sanctions, Godley cited Rule 11(b)(2) and (3) which relates to the filing of a legally and/or factually baseless cause of action. [Doc. 6, at 1]. In the memorandum of law in support of the motion for sanctions, Godley also argues that the legally and factually baseless cause was brought for an improper purpose; that is, to collect a judgment which has been ruled unenforceable. [Doc. 7, at 1].

States District Court for the Eastern District of Kentucky entered a money judgment in the full amount of $611,200.53 in favor of [Anderson] and against these five Defendants[] on June 15, 2000. The United States Court of Appeals for the Sixth Circuit affirmed that award on March 29, 2002.

...

Anderson attempted to enforce this judgment in North Carolina on numerous occasions.

[Doc. 10, at 6-7].  The North Carolina courts, however, found that the

judgment violated North Carolina public policy and therefore was

unenforceable in North Carolina state courts. [Id., at 9]; Anderson, 2008

WL 5111073, at **3  n.2.

As noted by the Fourth Circuit:

Anderson brought [the] declaratory judgment action against Margaret L. Godley and [others,] requesting the district court to declare his Kentucky federal judgment against the defendants to be valid and enforceable in North Carolina state courts.  Anderson later brought [this] action against Frank Godley (Godley) asserting that Godley's parents, who were then deceased, "engaged in a racketeering conspiracy, injuring numerous victims, including Anderson," and that Godley defrauded Anderson to prevent him from collecting on his judgment.

Anderson, 2008 WL 5111073, at **1.

Anderson's Kentucky judgment was not against Frank Godley, but

rather against his mother who was deceased at the time this action was

commenced.  Anderson conceded in his Complaint that Margaret Godley is

"now [] deceased," [Doc. 1-2, at 4], and that Frank Godley is not the

executor of the Estate of Margaret Godley. [Doc. 1-2 at 17]. Apparently for

this reason Frank Godley was not sued in a representative capacity, but he

was sued in an individual capacity asserting his personal liability. It is

therefore necessary to review the allegations of the Complaint to ascertain

whether Anderson has alleged personal conduct by Frank Godley upon

which each cause of action may be based as a matter of law.

> In the introductory paragraphs of the Complaint, Anderson alleged:

> In January of 2007, after the death of the conspirator/Kentucky case defendant, Margaret L. Godley, her three co-conspirator sons, one of whom is the defendant, Frank Godley, further acted with the intent to hinder, delay and further defraud the plaintiff creditor from ever recovering the monies stolen from him or his damages, to prevent him from enforcing and collecting his judgment, and to deny plaintiff justice and due process. Those actions prevented plaintiff from delivering official court documents to the sons through the U.S. Mail and involved handling their mother's estate in a fashion to further hinder, delay, defraud and prevent the plaintiff from recovering the monies stolen from him and his damages from her estate.

[Doc. 1-2, at 8-9].

> Read in conjunction with other allegations (Doc. 1-2, at 18),

Anderson claims that Godley refused to accept service of process through

certified mail. He also claims that Godley acted in some undisclosed

manner in the handling of his mother's estate so as to defeat Anderson's

ability to collect his judgment from that estate. As noted, however,

Anderson concedes that Godley was not the executor of his mother's

estate. [Doc. 1-2 at 17]; Anderson, 2008 WL 5111073, at **3 n.1.

With this background, Anderson asserts several causes of action by which he claims Godley is personally liable to him.  In the first cause of action, Anderson sought to state a claim pursuant to the Civil Racketeering Influenced and Corrupt Organization Act (RICO), 18 U.S.C. §1962.  In order to recover for a civil RICO claim, a plaintiff must show (1) the defendant violated 18 U.S.C. §1962; (2) the plaintiff has suffered injury to business or property; and (3) the defendant's violation of the RICO statute was the proximate cause of the injury.  Brandenburg v. Seidel, 859 F.2d 1179, 1186 (4th Cir. 1988), *overruled on other grounds* Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 711, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996); Buchanan County, Virginia v. Blankenship, 496 F.Supp.2d 715, 718 (W.D.Va. 2007).  "A private RICO plaintiff only has standing to bring suit if he can show damage to 'business or property' *proximately caused* by the defendant's RICO violation."  Potomac Elec. Power Co. v. Electric Motor & Supply, Inc., 262 F.3d 260, 264 (4th Cir. 2001), *certiorari denied sub nom* Electric Motor & Supply, Inc. v. Potomac Elec. Power Co., 535 U.S. 927, 122 S.Ct. 1297, 152 L.Ed.2d 209 (2002) (emphasis provided).

It is first noted that the Fourth Circuit characterized this claim as one against Godley's parents.  Anderson, 2008 WL 5111073, at **1 ("Anderson

later brought [this] action against Frank Godley (Godley) asserting that

Godley's parents, who were then deceased, 'engaged in a racketeering

conspiracy[.]'").  In an effort to assert that Frank Godley was a part of that

conspiracy, Anderson alleged:

> The defendant and son of Margaret L. Godley [Frank Godley],
> Margaret L. Godley, her other son James B. Godley, her other
> son John C. Godley ...  are associated in fact in an organization
> having an ascertainable structure and which functions as a
> continuing unit for the common purpose of peddling the Degroot
> Patents despite the adjudication of these instruments as legal
> nullities.  As such, this aggregate entity is an association in fact
> and an enterprise engaged in, and the activities of which affect,
> interstate commerce.
> ...
> As a direct and proximate result of the ongoing racketeering
> activities of the defendant, in concert with [Margaret] Godley, her
> associates and co-conspirators, and the aforesaid association in
> fact and enterprise ...  the plaintiff has been injured in his
> business and property.

[Doc. 1-2, at 9; 13].

First, this language sets forth no alleged wrongful acts - or acts of

any kind - on the part of the Defendant.  They constitute a mere recitation

of elements of a RICO conspiracy.  This is insufficient to state a claim.

Second, this cause of action harks back to the conduct upon which

the Kentucky litigation was based.  In other words, Anderson seeks to hold

Frank Godley liable for the alleged conduct of his mother in selling

Anderson the Kentucky property (the Degroot Patents).  The fact remains,

however, that Anderson's judgment has been adjudicated to be unenforceable in North Carolina.  Therefore, even if the Kentucky judgment constitutes some form of property, Anderson cannot show that he sustained damage to that property which was *proximately caused* by any such alleged RICO violation, whether by Defendant or by anyone else. Potomac Elec. Power Co., 262 F.3d at 264.  The judgment is unenforceable as a result of North Carolina law, not because of anything that Frank Godley did or did not do.  Miller v. Asensio & Co., 364 F.3d 223, 232 n.6 (4th Cir. 2004) (noting that proximate causation could not be shown by "mere speculation and surmise" and that the injury must be caused by the RICO violation).

Anderson's second cause of action is for fraudulent conveyances. Under North Carolina's law of fraudulent conveyances, a conveyance is fraudulent if the debtor/grantor transferred an asset with the actual intent on the part of the debtor/grantor to hinder, delay or defraud his creditor. Tiber Holding Corp. v. DiLoreto, 170 N.C.App. 662, 665, 613 S.E.2d 346 (2005), *review denied* 360 N.C. 78, 623 S.E.2d 263 (2005); N.C.G.S. §39-23.4.  In support of this claim, Anderson alleges that

> [d]uring the Kentucky litigation and through January 2007, the defendant was also involved, directly or indirectly, knowingly and intentionally, as a co-conspirator complicit with the aforesaid association in fact and its enterprises in related predicate acts

involving conveyances to defraud the plaintiff [] and/or fraud and fraudulent and wrongful concealment whereby major assets of Margaret L. Godley were conveyed as a means to further defraud the plaintiff/creditor, to preserve the ill-gotten gains from the racketeering activities, to prevent plaintiff's recovery of the monies stolen from him and his damages, to defeat the enforcement and/or collection of plaintiff's Kentucky federal money judgment[.]

[Doc. 1-2, at 13].

Throughout the section of the Complaint dealing with fraudulent conveyances, Anderson includes similar vague and often confusing conspiracy allegations, apparently in an attempt to relate them to the RICO claim.  Anderson explained during the hearing that if Frank Godley received an asset from his mother during the period of time that Anderson's judgment was on appeal, he believed the transfer was fraudulent and he could recoup the asset.  None of the conveyances complained of, however, were during the period of that appeal.  Anderson cites a conveyance by Margaret Godley to Frank Godley and his brother of a parcel of real estate on January 5, 2004.  As of April 2, 2003, however, Anderson's attempts to enforce the Kentucky judgment had been rejected by North Carolina courts. [Doc. 10, at 8-10].   Since Anderson's judgment was unenforceable in North Carolina, he cannot show that Margaret Godley's conveyance was made with the actual intent to defraud him as a creditor.  Anderson cannot "do indirectly what [he] cannot do

directly–attack a state court judgment in federal court." <u>In re Broughton</u>, 25 F.3d 1038 **3 (4th Cir. 1994), *citing* <u>District of Columbia Court of Appeals v. Feldman</u>, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983).

Anderson alleges there was a conveyance by Margaret Godley in 1995 to Godley Auction Company, Inc. [Doc. 1-2, at 14].  This conveyance, however, was not made by or to Frank Godley.  N.C.G.S. §39-23.4(a)(1) ("A transfer made ... by a *debtor* is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made ..., if the *debtor* made the transfer ... with intent to hinder, delay or defraud [the] creditor of the *debtor*.") (emphasis provided).  Since Frank Godley was not a party to the transaction, no claim can lie against him even if the transaction were found fraudulent.  Moreover, the statute of limitations on any such claim is four years from the date of transfer,  N.C.G.S. §39-23.9(1), and expired long before this action was commenced.  Likewise, Anderson claims that Margaret and others, including Frank Godley, made a certain conveyance in 1997.  The statute of limitations would preclude any suit based thereon.  N.C.G.S. §§39-23.4(a)(1); N.C.G.S. §39-23.9(1).

Anderson asserts that James Godley made a conveyance to Frank Godley in January 2002.  Anderson provides no explanation as to how such a conveyance implicates Margaret Godley's purported debt to

Anderson. He does not allege that James Godley was Anderson's debtor. N.C.G.S. §§39-23.4(a)(1). The statute of limitations would preclude the litigation of this claim as well, even if it alleged an otherwise cognizable claim. N.C.G.S. §39-23.9(1).

Finally, Anderson refers to conveyances made by Margaret Godley on unspecified dates to unidentified persons or entities. [Doc. 1-2, at 14]. Anderson does not expound as to how these conveyances were fraudulent or what, if anything, Frank Godley had to do with them. The allegations made are too speculative to state a claim. Norman Owen Trucking, Inc. v. Morkoski, 131 N.C.App. 168, 271-72, 506 S.E.2d 267 (1998).

During the hearing, Anderson was provided an opportunity to explain the following allegations in the Complaint against Frank Godley as they relate to the claim for fraudulent conveyances:

> The ongoing predicate acts of fraudulent conveyance and/or fraud ... include the attendance and participation by the defendant at a meeting, along with his co-conspirator Julius Jennings Wade, Jr., who is also a convicted felon, disbarred lawyer, and judgment debtor to the plaintiff in the Kentucky case, with the plaintiff on 26 June 200[2], in Bristol, Virginia, in furtherance of the aforesaid schemes and fraudulent conveyances and/or fraud, to further defraud the plaintiff/creditor, to preserve the ill-gotten gains from the racketeering activities, to prevent plaintiff's recovery of the monies stolen from him and his damages, to defeat the enforcement and/or collection of plaintiff's Kentucky federal money judgment, and to deny plaintiff due process and justice.

[Doc. 1-2, at 16-17].

According to Anderson, Frank Godley appeared at this meeting on behalf of his mother, who at the time was eighty-eight years old and in poor health.[5]  He also claimed that the meeting actually was a settlement conference.  Anderson concluded, based on Frank Godley's presence at that meeting, that he was a member of the original conspiracy to defraud Anderson, the fraud which led to the Kentucky judgment.  Anderson admitted that he did not remember anything that Frank Godley said or did at the meeting.  Furthermore, there is no allegation that as a result of that meeting any conveyance occurred.  Such vague allegations and rank speculation do not state a claim that is plausible on its face; there must be more alleged than "a sheer possibility that a defendant has acted unlawfully."  Ashcroft v. Iqbal, __ U.S. __, 129 S.Ct. 1937, 1949, 77 U.S.L.W. 4387 (2009).

The last factual allegation in the Complaint related to the claim for fraudulent conveyances relates to the administration of Margaret Godley's estate.

> Co-conspirator Margaret L. Godley died on 16 January 2007 and in her Last Will and Testament ... named her three sons, Johnny, James and the defendant Frank as heirs *and Johnny as executor of her estate*; however four months after the death of Margaret Godley her Last Will and Testament has not been filed, no

---

[5]Although the Complaint alleges that the meeting occurred in 2004, the parties have conceded that the correct date is 2002.

Executor ... has applied for letters testamentary and/or been properly qualified as such in the Clerk's Office of the Mecklenburg County Superior Court at Charlotte, N.C. and no related legal public notices have been published ...[.]

[Doc. 1-2, at 17] (emphasis provided).

At the time that Margaret Godley died, Anderson's judgment had been declared unenforceable by the North Carolina state courts. The administration of her estate, or lack thereof, has no bearing on Anderson's inability to enforce the judgment. Moreover, Frank Godley was not named the executor of the estate.

Even if Anderson were to claim that these conveyances were fraudulent based on his theory that Margaret Godley conveyed her estate prior to death in order to defeat Anderson's judgment, the fact remains that Anderson's judgment was pronounced unenforceable long before Margaret Godley died.

Anderson's third cause of action is for civil conspiracy. Frank Godley is alleged to have been part of a conspiracy to prevent the enforcement and collection of the Kentucky judgment by virtue of the underlying causes of action for RICO violations and fraudulent conveyances. [Doc. 1-2, at 20-22]. Because Anderson has failed to state cognizable claims for a RICO violation or fraudulent conveyances, the civil conspiracy claim fails. In North Carolina, there is no independent cause of action for civil conspiracy.

Byrd v. Hopson, *et. al*., 265 F.Supp.2d 594 (W.D.N.C. 2003), *affirmed* 108 Fed.Appx. 749 (4th Cir. 2004).

Anderson's next claim is for fraud; that is, that Frank Godley knowingly made a definite and specific representation which was materially false; that he made it with knowledge of its falsity and with the intent to deceive Anderson; that it was reasonably relied on by Anderson and that Anderson was injured thereby.  Schlieper v. Johnson, 672 S.E.2d 548, 552 (2009), *quoting* Lillian Knitting Mills Co. v. Earle, 237 N.C. 97, 105, 74 S.E.2d 351 (1953).   Anderson has not alleged, however, what representations, if any, Frank Godley made to him.  In fact, during the hearing, Anderson admitted that he could not recall any statement made or action taken by Godley.  Libby Hill Seafood Restaurants, Inc. v. Owens, 62 N.C.App. 696, 698, 303 S.E.2d 565, *disc. review denied*, 309 N.C. 321, 207 S.E.2d 164 (1983) ("the most glaring omissions are sufficient evidence of [] a representation, false or otherwise, and [] reasonable reliance").  In this purported claim, the allegation is that co-conspirators made such representations. [Doc. 1-2, at 22] ("material representations by the conspirators").   In order to state a claim for fraud, there must be more alleged than "a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 129 S.Ct. at 1949.  Rule 9 of the Federal Rules of Civil

Procedure requires that allegations of fraud be made with particularity. Plaintiff failed to do so in any respect, and as he admitted during the hearing, he is unable to do so.

Anderson's last claim is for wrongful concealment by "the co-conspirators" of their illegal activities which prevented Anderson from collecting on his judgment. [Doc. 1-2, at 25-26]. To state a claim for wrongful concealment, Anderson must prove concealment of a material fact by Frank Godley which was reasonably calculated to deceive; made with the intent to deceive and which in fact did deceive resulting in damage. Jones v. Harrelson and Smith Contractors, L.L.C., 670 S.E.2d 242 (2008), *affirmed* __ S.E.2d __, 2009 WL 1689084 (2009). Anderson, however, admits that he

> felt compelled to push ahead with this [claim] against the defendant despite the conspirators' ongoing success in their ongoing fraudulent and wrongful concealment of their actions which have resulted in the plaintiff's failure to discover operative facts that likely would greatly enhance and strengthen the basis of his cause of action against the defendant and his co-conspirators and their association in fact and enterprises.

[Doc. 1-2 at 25-26].

This language contained within the Complaint is an admission that Anderson *has no facts* to establish the cause of action. In any event, Anderson's inability to enforce the Kentucky judgment is not the result of

concealment of any fact; it is based on the rulings of the North Carolina state courts.

The Court finds that the factual contentions underlying each of the claims alleged in the Complaint do not have evidentiary support.  The Court also finds that the legal contentions are not warranted by existing law.  In short, Anderson admits in substance that he brought this action in hopes of avoiding the rulings of the North Carolina state courts concerning the unenforceability of the Kentucky judgment.  That which he could not enforce against Margaret Godley, he has attempted to enforce against Frank Godley by virtue of convoluted and speculative allegations related to broad, over-arching conspiracies.

## DISCUSSION CONCERNING RULE 11 SANCTIONS

As discussed above, Anderson failed to state a single cause of action against Frank Godley.  The next step is to determine whether his conduct in signing and filing this Complaint, lacking in a single meritorious factual or legal claim, warrants the imposition of sanctions.  It is noted that despite the fact that Anderson moved to dismiss this action, Rule 11 sanctions may be imposed when a case is no longer pending.  Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 394-96, 110 S.Ct. 2447, 110 L.Ed.2d

359 (1990).

Godley claims that Anderson violated Rule 11 as follows: (1) he signed and filed a complaint which contained factual contentions having no evidentiary support; (2) he signed and filed a complaint containing legal contentions unsupported by law; and (3) he brought this action for the improper purpose of attempting to collect from Frank Godley that which the North Carolina courts have ruled Anderson may not collect from Margaret Godley. [Doc. 7, at 1] ("Anderson seeks with this groundless lawsuit to hold Frank Godley liable for alleged 1993 conduct underlying a Kentucky default judgment [he] obtained against Frank Godley's now deceased mother, Mrs. Margaret Godley[,] and to try and hold Frank Godley liable in damages for multiple adverse trial and appellate court rulings that prevent [Anderson] from enforcing the Kentucky default judgment in North Carolina.").

"Filing a complaint in federal court is no trifling undertaking." Christian v. Mattel, Inc., 286 F.3d 1118, 1127 (9th Cir. 2002). "One of the fundamental purposes of Rule 11 is to 'reduce frivolous claims ... and to deter costly meritless maneuvers, ... [thereby] avoid[ing] delay and unnecessary expense in litigation.'" Id. Where the complaint is the primary focus of the Rule 11 proceeding, the court must determine whether the complaint is frivolous, that is, is it legally or factually baseless from an

objective point of view.  Id.; Intamin Ltd. v. Magnetar Technologies, Corp., 483 F.3d 1328 (Fed.Cir. 2007); Sanders v. Tyco Electronics Corp., 235 F.R.D. 315 (W.D.N.C. 2006).

> In determining whether a signatory violated Rule 11, the court must apply an objective standard of reasonableness.  The fact that [Anderson] represented himself *pro se* in the [case] does not change [the] analysis.  Rule [11] does not exempt *pro se* litigants from its operation; a *pro se* litigant has the same duties under Rule [11] as an attorney.

In re Weiss, 111 F.3d 1159, 1170 (4th Cir. 1997), *certiorari denied sub nom* McGahren v. First Citizens Bank & Trust Co., 522 U.S. 950. 118 S.Ct. 369, 139 L.Ed.2d 287 (1997); *accord*, In re Allnutt, 155 F.3d 557 (4th Cir. 1998); Katti v. Moore, 2006 WL 3424253 (E.D.Va. 2006) (although a *pro se* party may be granted a degree of indulgence greater than a practicing attorney, he must still abide by the requirements of Rule 11).  Thus, before filing a complaint, even a *pro se* litigant must conduct a factual inquiry which uncovers some information to support the allegations of the complaint and must also uncover some basis in law to support the claims raised therein. Fed.R.Civ.P. 11(b); Brubaker, 943 F.2d at 1373.

The Court conducted a hearing for the purpose of allowing Anderson to offer his explanations for the factual and legal basis for his Complaint. As recited above, the Plaintiff asserts in the Complaint claims against the Defendant of Civil RICO, common law civil conspiracy, fraud, and

fraudulent conveyances. When asked during the hearing what evidence the Plaintiff had to support these allegations, Plaintiff could only point the Court to the fact that in relation to the Kentucky judgment that Godley was present at the 2002 mediation on behalf of his elderly mother. Plaintiff asserted at the hearing that based on Defendant's presence at the mediation that he concluded that Defendant was a member of the greater conspiracy to defraud Plaintiff that formed the basis for the Kentucky litigation. When asked what the Defendant had said or done at that mediation that led Plaintiff to this conclusion, the Plaintiff could only report to the Court that he could not remember anything that Defendant had said or done, other than be present at the mediation. Plaintiff failed to show any evidentiary basis for his belief that Frank Godley did the acts alleged in the Complaint or that he participated in any type of conspiracy. Chosin Few, Inc. v. Scott, 209 F.Supp.2d 593, 602 (W.D.N.C. 2002), *quoting* Brubaker, 943 F.2d at 1373 ("[W]here there is *no* factual basis for a plaintiff's allegations, the complaint violates Rule 11's factual inquiry requirement."). It is not objectively reasonable to conclude that because Godley attended a settlement conference on behalf of his elderly, infirm mother, he was involved with a conspiracy to prevent Anderson from collecting an unenforceable judgment. Nor does his presence at such a

meeting show that he performed acts which would establish the causes of action alleged.

Anderson was also unable to provide any logical explanation for the various legal claims alleged. Brubaker, 943 F.2d at 1373 (legal investigation does not "pass muster" "where the complaint has absolutely no chance of success"). He admitted that he attempted to research the law and that he read cases which led him to believe his causes of action were legally valid. When pressed to identify such cases, however, he was unable to do so, stating only that he had many pages of notes. In explaining why his legal theories raised claims against Frank Godley, Anderson repeatedly recited vague generalities about how Civil RICO claims pertained to two or more persons acting together to defraud another. He was unable, however, to connect such basic platitudes with meaningful facts or legal theories. Anderson's mantra throughout the hearing was that Frank Godley must have been part and parcel of a conspiracy to prevent Anderson from enforcing the Kentucky judgment. In essence, and in substance, Anderson has simply refused to accept the rulings of the North Carolina courts. Having failed to enforce the judgment against Margaret Godley, he determined to create some legal theory through which he could reach her son. Although she has three sons,

Anderson pursued only Frank, apparently doing so only because of his presence at a 2002 settlement conference in Virginia.

The Court rejects as not credible Anderson's claims that his investigation and research led him to believe he could properly assert the causes of action alleged in the Complaint. <u>Cooter & Gell</u>, 496 U.S. at 402 (in ruling on a motion for Rule 11 sanctions, the district court must make credibility determinations). Anderson's claims of a far-reaching conspiracy are mere conjecture founded on outrageous accusations. <u>In re Kunstler</u>, 914 F.2d 505, 515 (4th Cir. 1990), *certiorari denied sub nom* <u>Kunstler v. Britt</u>, 499 U.S. 969, 111 S.Ct. 1607, 113 L.Ed.2d 669 (1991) (where the allegations made in the Complaint are outrageous in tone, nature and demeanor, they are not credible). As noted, the Court finds that Anderson manipulated legal theories in order to try to enforce the Kentucky judgment against Frank Godley. Anderson's explanations provided during the hearing are simply not credible. <u>In re Downs</u>, 103 F.3d 472, 481 n.3 (6th Cir. 1996) (rulings on Rule 11 motions "are fact-specific and almost invariably require assessments of credibility"); *accord*, <u>In re Cascade Energy & Metals Corp.</u>, 87 F.3d 1146, 1149 (10th Cir. 1996); <u>Caisse Nationale de Credit Agricole CNCA, N.Y. v. Valcorp, Inc.</u>, 28 F.3d 259 (2nd Cir. 1994).

Both in the Complaint and at the hearing, Anderson conceded that he brought this lawsuit in order to collect his judgment. Godley argued, in moving for sanctions, that Anderson filed this action for an improper purpose. "[Actions] filed for the central purpose of delaying or avoiding a collateral state [ruling] constitute [actions] filed for an 'improper purpose.'" In re Weiss, 111 F.3d at 1171; *accord*, In re Kunstler, 914 F.3d at 518; John Akridge Co. v. Travelers Companies, 944 F.Supp. 33, 34 (D.D.C. 1996), *affirmed* 1997 WL 411654 (D.C.Cir. 1997) (Discussing Rule 11 and sanctioning pursuant to inherent powers, the court held "there is no question that the plaintiffs filed the instant suit with the specific intent of circumventing this court's dismissal of its earlier suit."). As noted, Anderson admits as much. In re Weiss, 111 F.3d at 1171; In re Kunstler, 914 F.2d at 519 ("The fact that so many allegations in the complaint lacked a basis in law or in fact strongly supported the court's finding of improper purpose."). Reviewing Anderson's conduct from an objective standard of reasonableness, the Court finds that the Complaint was filed for the improper purpose of attempting to collect from the son that which Anderson could not collect from the mother. Id.

Both Anderson and Godley submitted voluminous exhibits related to the Kentucky litigation as well as Anderson's prolific filings in other courts.

Godley argues that these earlier filings show a pattern of frivolous filings.

Anderson claims these earlier cases show that he was in fact entitled to

the relief which he sought.

> These arguments miss the point: it is the filing of *this* action for which sanctions[,] are to be imposed. The court reviews the previous filings only as means of ascertaining whether [Anderson] w[as] on notice, or should have been, that *this* action was not well grounded in fact or law.

Bob McLemore & Co., Inc. v. Branch Banking & Trust, 54 F.Supp.2d 554,

559 (W.D.N.C. 1999), *affirmed* 205 F.3d 1334 (4th Cir. 2000). The Court

finds that Anderson was well aware that the North Carolina courts would

not enforce his judgment and that this action was filed in an attempt to

circumvent such rulings. Indeed, the declaratory judgment action

previously consolidated with this case was an attempt to obtain a ruling

from a federal court forcing the state courts to enforce his judgment. The

Court finds that the signing and filing of this action violated Rule 11(b)

because the allegations of the Complaint were both factually and legally

baseless from an objective standard of reasonableness. Moreover, the

primary reason for filing the Complaint in this action was to avoid the

determination of the North Carolina state courts that Anderson's Kentucky

judgment is unenforceable. Using an objective standard of

reasonableness, the Court also finds that Anderson filed this action for an

improper purpose.

Having found that Anderson violated Rule 11, some type of sanction is mandatory; therefore, the question is what constitutes an appropriate sanction.  Cabell v. Petty, 810 F.2d 463 (4th Cir. 1987); Vance v. M. Loeb Co., 812 F.2d 1402 **3 (4th Cir. 1987).  The "primary, or 'first' purpose of Rule 11 is to deter future litigation abuse."  Kunstler, 914 F.2d at 522.  As noted in the filings of both parties, Anderson has spent the past sixteen years in litigation concerning the Kentucky land.  In addition to these two lawsuits filed in the Western District of North Carolina, Anderson brought four suits in North Carolina state courts. [Doc. 7, at 1-8].  Rule 11 "attempts to discourage the needless filing of groundless lawsuits."  Hunter v. Earthgrains Co. Bakery, 281 F.3d 144, 153 (4th Cir. 2002).  Thus, "the primary purpose of sanctions ... is not to compensate the prevailing party, but to 'deter future litigation abuse.'"  Id., at 151 (citation omitted).

> "A sanction imposed for a violation of [Rule 11] shall be limited to what is sufficient to deter repetition" of the objectionable conduct. [The Fourth Circuit] has made "clear that the primary ... purpose of Rule 11 is to deter future litigation abuse."  Other objectives advanced by the imposition of a sanction are remediation of the harm caused by the Rule 11 violation, for example by compensating the victim for attorney's fees expended in responding to the frivolous claim; punishment of the person ... responsible for the violation; and enhancement of judicial administration.

In re Sargent, 136 F.3d 349, 352-53 (4th Cir. 1998), *certiorari denied sub*

*nom* <u>Cox v. Sargent</u>, 525 U.S. 854, 119 S.Ct. 133, 142 L.Ed.2d 108 (1998).

Godley has moved for a monetary sanction in the form of an award of attorney's fees.

> The amount of a monetary sanction, ... should always reflect the primary purpose of Rule 11 - deterrence of future litigation abuse. Accordingly, a district court should expressly consider the four factors adopted by [the Fourth Circuit] in <u>In re Kuntsler</u>: "(1) the reasonableness of the opposing party's attorney's fees; (2) the minimum to deter; (3) the ability to pay; and (4) factors related to the severity of the Rule 11 violation."

<u>Brubaker</u>, 943 F.2d at 1374 (citations omitted).

"The most useful starting point for determining the amount of a reasonable [attorney's] fee" is to determine the lodestar amount, or "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." <u>Guidry v. Clare</u>, 442 F.Supp.2d 282, 293-94 (E.D.Va. 2006) (citations omitted); *accord*, <u>Homkow v. Musika Records, Inc.</u>, 2009 WL 721732 (S.D.N.Y. 2009).

Godley seeks an award of attorney's fees and costs totalling $62,096.17. [Doc. 26]. In support of the request, Jared Gardner (Gardner), an attorney with James, McElroy & Diehl, P.A., filed an affidavit in which he identified the three phases of the case: (1) the motion to dismiss filed in the Western District of Virginia, for which attorneys' fees and costs totaled $19,053.87; (2) the defense of the suit in this Court, including the motion

for Rule 11 sanctions, for which attorney's fees and costs totaled $33,521.86;[6] and (3) the representation of Godley in the appeal and cross-appeal, for which attorney's fees and costs totaled $9,520.44. [Id., at 2].

Gardner identified the attorneys who have worked on this case along with their hourly rates. [Id., at 1-2]. The hourly rates ranged from $160 to $750; however, he did not include in the affidavit a break down of how many hours were spent by each attorney. [Id.]. Guidry, 442 F.Supp.2d at 294 ("Proper documents is the key to ascertaining the number of hours reasonably spent on legal tasks.") (citation omitted). Likewise, although the hourly rates for paralegals and law clerks were identified, there is no statement of the amount of time spent by those employees on this case. Although the Court does not hold that an itemized statement of the hours expended by each attorney is required (see, *e.g.*, Dostert v. Harshbarger, 911 F.2d 721 **5 n.4 (4th Cir. 1990)), the lack of detail makes a determination of the reasonableness of the fees sought difficult. Guidry, 442 F.Supp.2d at 294 (the lack of documentation showing contemporaneous recordation of time for tasks performed does not allow the court to weigh the hours claimed and to exclude hours not reasonably expended). For example, one of Defendant's attorneys, William Diehl,

---

[6]Gardner estimated that $18,000.00 of that amount "is fairly attributed to the presentation" of the motion for sanctions. [Id.].

charges $750 per hour but there is no statement of the total number of hours charged by him. Moreover, there is nothing in the record showing that such an hourly rate is reasonable or customary or that the work performed was necessary.[7] Guidry v. Clare, 442 F.Supp.2d at 294-95; Homkow, 2009 WL 721732 at **25. Normally the Court would consider the twelve factors set forth in Johnson v. Georgia Highway Express, 488 F.2d 714, 717-19 (5th Cir. 1974), *abrogated on other grounds* Blanchard v. Bergeron, 489 U.S. 87, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989). Anderson's financial circumstances, however, render moot any further consideration of what constitutes a reasonable attorney's fee. In re Kunstler, 914 F.2d at 524 ("The offender's ability to pay must also be considered, not because it affects the egregiousness of the violation but because the purpose of monetary sanctions is to deter ... litigant misconduct.").

During the hearing, Godley stipulated that the Court could consider Anderson's representations of his financial ability without being sworn and without presenting further evidence. Anderson advised the Court that he is

---

[7]Gardner stated in his affidavit that he "believed" the hourly rates were reasonable and in keeping with charges that would be made by comparable attorneys in the area. [Doc. 26, at 2]. He also expressed his opinion that the time expended was reasonable and necessary. [Id.]. The Court must express its view that charging $17,928.50 for the motion to dismiss filed in the Virginia court appears to be of questionable necessity. Without the time records, however, it is impossible to know if the work done was either. Similarly, $18,000.00 in fees for the Rule 11 sanction motion seems unduly high. Indeed, that aspect of the case which would seem to have required the most work, the appeal, had the smallest portion of the attorney's fees, $8,973.00.

almost seventy years old and that his sole source of income is $500 per month in social security benefits. He described himself as an indigent farmer who receives assistance from friends. <u>Salvin v. American Nat. Ins. Co.</u>, 281 Fed.Appx. 222 **4 (4th Cir. 2008) (a monetary sanction imposed without any consideration of ability to pay is an abuse of discretion); <u>Chosin Few, Inc. v. Scott</u>, 209 F.Supp.2d 593, 605 (W.D.N.C. 2002). Anderson stated at the hearing that he suffers from poor health. "The minimum sanction necessary to deter future Rule 11 violations and the plaintiff's ability to pay are closely related." <u>Myers v. America's Servicing Co.</u>, 227 F.R.D. 268, 271 (E.D.Va. 2005). "The minimum amount necessary to deter undesirable litigation conduct will often vary based on the financial condition of the wrongdoer." <u>Id</u>. The amount of the sanction should not be so great as to bankrupt the party being sanctioned. <u>In re Kunstler</u>, 914 F.2d at 522. The Court therefore recognizes that Anderson lives at or below a poverty level. For this reason, the amount of a monetary sanction that should deter future improper conduct should necessarily be small.

The final factor to consider is the severity of the Rule 11 violation. Anderson's pursuit in this action of Margaret Godley's son was egregious. If Anderson had financial resources, the Court would impose a far larger

sanction.  The minimum sanction to deter Anderson from pursuing frivolous lawsuits in the future will therefore be combined with a warning that any future frivolous filing will result in a pre-filing injunction and more severe sanctions.  Cromer v. Kraft Foods North America, Inc., 390 F.3d 812 (4th Cir. 2004); Vestal v. Clinton, 106 F.3d 553 (4th Cir. 1997).  Since Anderson's entire monthly income is $500, the Court will order that he pay the sum of $500 toward Defendant's  attorney's fees as a sanction. Although the Court finds this sum woefully inadequate, Anderson's financial ability combined with his health dictates that this sum is appropriate.

## ORDER

**IT IS, THEREFORE, ORDERED ADJUDGED AND DECREED** that the Defendant's Motion for Sanctions [Fed.R.Civ.P. 11(c)] [Doc. 6] is hereby **GRANTED**.

**IT IS FURTHER ORDERED** that the Plaintiff shall pay to the Defendant the sum of $500 as attorney's fees.

**IT IS FURTHER ORDERED** that the Plaintiff is hereby cautioned that any future frivolous filing stemming from the facts and circumstances related to or involved in this litigation may result in the imposition of further

monetary sanctions, other sanctions and a pre-filing injunction.  If such a

system is imposed, any filing presented to the United States District Court

for the Western District of North Carolina shall be subject to pre-filing

review by the undersigned and shall not be filed absent an explicit

instruction to do so.

Signed: September 4, 2009

Martin Reidinger
United States District Judge